Mrs. Adrienne Nunez Andry is the surviving widow in community of L. Fred Andry, who, while domiciled in the Parish of Jefferson, died intestate on February 7, 1920. L. Fred Andry, Jr., and Mrs. Genevieve Andry Gubler are the sole surviving children of the said L. Fred Andry. The three said survivors bring this suit to quiet title to four lots of ground which Andry, on August 30, 1919, is alleged to have acquired at tax sale from the sheriff and ex officio tax collector for the Parish of Jefferson. The land involved is described as follows:
"Four certain lots of ground, situated in the Parish of Jefferson, Louisiana, in that part known as Canal Street Subdivision, said lots are designated by the Numbers Thirty-three, thirty-four, thirty-five and thirty-six of Square Number 45, and measure twenty-five feet front on Lake Shore Drive, by a depth of one hundred and ten feet, between equal and parallel lines."
The defendant is William S. Pfaff, who is alleged to be in possession of the said property and who, according to plaintiffs, is claiming to have a valid title thereto.
The defenses set up are:
(1) That in 1918, one year before the tax sale at which Andry is alleged to have acquired the property the said lots had been adjudicated to the State of Louisiana for unpaid taxes of 1917.
(2) That, because of the earlier tax adjudication to the State of Louisiana, there could have been no legal notice under which the property could have been sold to Andry, and,
(3) That, at the time of the sale at which Andry is alleged to have acquired the property, there was a dual assessment thereof, one in the name of H.P. McGloin, from which assessment the sale to Andry resulted, and one in the name of Home Builders Realty Company, alleged by defendant to be the true owner of the said property.
Defendant claims title through said Home Builders Realty Company, averring that that corporation, in 1920, redeemed the property after the adjudication to the State of Louisiana for the unpaid taxes of 1917.
There was judgment in favor of plaintiffs and defendant has appealed.
The four lots which are involved were part of larger tracts of land which, on July 21, 1914, by act before Felix J. Dreyfous, notary public, the Columbia Land Development Company sold to Home Builders Realty Company (which, by charter amendment, has since changed its name to Liberty Realty Securities Company, Inc.). By this act, in 1914, the Home Builders Realty Company acquired several tracts of land situated in what was known as the "Town of Bath No. 2". Attached to this act is a plan on which is shown Square No. 45 of the Canal Street Subdivision. It is in this square that the four lots here involved are situated.
We shall commence our investigation with the act of 1914, because defendant, as well as plaintiffs, trace title thereto. We start, then, in 1914 with title to these large tracts of land in Home Builders Realty Company.
On August 3, 1916, Home Builders Realty Company, by act under private signature, sold and delivered to H.P. McGloin these four lots which we have already described. This sale was acknowledged before Emile L. Weil, notary public, and was registered on August 7, 1916, in the conveyance records of the Parish of Jefferson in Conveyance Book No. 38, folio 313. For the years 1917 and 1918, this property appeared on the assessment records of Jefferson Parish in the name of H.P. McGloin, the purchaser just above referred to, but the taxes for the year 1918 resulting from the assessment in the name of McGloin were not paid, and accordingly, as authorized by Act 170 of 1898, the sheriff and ex officio tax collector for the Parish of Jefferson sold the property at tax sale to L. Fred Andry and, on September 10, 1919, executed a notarial act evidencing said tax sale. This act was registered on September 24, 1919, in Conveyance Office Book No. 46, folio 140 of the Parish of Jefferson.
From that time up to and including the year 1927, the lots were assessed in the *Page 234 
name of Andry and the taxes were regularly paid by Mrs. Andry. During the years 1928 to 1934 the said lots were assessed in the name of Andry and the taxes were likewise paid by Mrs. Andry for those years. However, for the year 1928, taxes on the property were also paid by or on behalf of the present defendant, Pfaff, on an assessment in the name of Jacob S. Garelick, a former owner of the property, and, for the years 1929 to 1934, inclusive, taxes were also paid by or on behalf of Pfaff on assessments in the name of Pfaff. Commencing with the year 1935 the property was assessed in the name of Pfaff only and he paid the taxes for the years 1935 to 1938, both inclusive. In the year 1936, when Mrs. Andry attempted to pay taxes for 1935, she was told that the property did not appear on the assessment rolls and she was told this again in 1937 and, also, in 1938. It was then that she consulted an attorney, who advised her to bring this suit.
It is obvious that the plaintiffs did not know of the dual assessment during the years 1928 to 1934 because the taxes for these years were paid regularly by Mrs. Andry, who, each year, secured a receipt showing only the name "Andry".
Before the sale for taxes of 1918, by which the present plaintiffs claim that Andry acquired title to the four lots in question, there had been an adjudication to the State of Louisiana for taxes for the year 1917, and the controversy here depends for its solution upon a determination of whether this earlier adjudication had included, or could have included, the four lots which the Andry estate claims it acquired at the later tax sale. The adjudication to the state for the 1917 taxes was made on August 20, 1918, and it resulted from an assessment in the name of Home Builders Realty Company and that adjudication involved property described as follows:
"A certain tract of land, etc., situated in the Parish of Jefferson, Louisiana, near Lake Pontchartrain, described as being parts of lots `B', `C', `D' and `F', of the town of Bath. The part `B' measures three hundred and thirty-two feet, eleven inches front on Canal Street, and extends in depth to the line of the property of R.R. Zell; Lots `C', `D' and `F' measure each four hundred and sixty-five feet, ten inches on Canal Street to the line of the property now or formerly owned by R.R. Zell, and being the same property purchased by Home Builders Realty Company from Columbia Land and Development Company, more fully set forth in Conveyance Book 34, folio 270 (Less part sold in the Subdivision known as Canal Street Subdivision)."
Under date of August 18, 1920, there was issued by the State of Louisiana to Home Builders Realty Company a certificate of redemption, showing the redemption by that corporation of the property which had been adjudicated to the State for taxes for 1917 assessed in the name of Home Builders Realty Company. We direct attention particularly to the last sentence in the description of the property adjudicated to the state and redeemed by Home Builders Realty Company, this last sentence reading as follows: "Less part sold in the Subdivision known as Canal Street Subdivision".
We think that the difficulty of defendant results from the failure of those who subsequently acquired the property of the Home Builders Realty Company to notice that, from that larger tract, certain portions had been alienated before the adjudication for taxes for the year 1917.
It is contended on behalf of defendant that the description of the property excepted is so vague as to make it impossible to state with certainty that the four lots which previously had been sold to McGloin were within the contemplation of the exception. In other words, it is said that the words "less part sold in the Subdivision known as Canal Street Subdivision" do not necessarily include the four lots which the Home Builders Realty Company had sold to McGloin during 1916. True enough, the exception is vague, but even if there had been no exception contained in the description the adjudication could not have included the four lots because it is certain that those four lots had been completely alienated by the Home Builders Realty Company in 1916. Therefore, even if the adjudication for the taxes for 1917 in the name of the Home Builders Realty Company had contained no exception and even if the redemption had contained no exception and even if, in both the adjudication and in the redemption, the description had purported to include the entire tract, it could not legally have affected title to those four lots because they had been properly assessed for 1917 and for 1918 in the name of the true owner, McGloin, and, therefore, the inclusion of those lots in the assessment against the Home Builders Realty Company would have been a dual assessment, from which no valid tax sale or adjudication could have resulted. *Page 235 
But we think that the exception, though vague, was amply sufficient to have put on notice anyone who might have investigated the title of the Home Builders Realty Company (Liberty Realty Securities Company, Inc.), and an investigation would have shown that those four lots had been sold in 1916 by that corporation, and that, consequently, no tax sale of that corporation's property and no conventional transfer by it could include those lots.
It now appears that, on November 8, 1921, McGloin, by act under private signature, transferred his interest in those four lots to Liberty Realty Securities Company, Inc. (Home Builders Realty Company), but that transfer can be given no effect whatever since neither McGloin nor his transferee took any steps within the time provided by law to effect the redemption of the property. Nor do any of the various quitclaim deeds affect the title in any way. Subject to the right of redemption which is provided by the Constitution and which was not exercised, that title, in 1916, effectively and completely passed from Home Builders Realty Company to McGloin, and, in 1919, it effectively and completely passed from McGloin to Andry and it has remained in Andry and in his survivors ever since.
As an alternative contention, defendant maintains that, if it should appear that the sale to Andry in 1919 was valid, then he, defendant, should be permitted to redeem the property upon reimbursement to the plaintiffs of the aggregate amount of taxes which have been paid since the acquisition by Andry. But we do not see that any such right of redemption still exists in McGloin, the tax debtor, or in his transferee, because it is provided, in Article 233 of the Constitution of Louisiana of 1913 that "the property sold shall be redeemable at any time for the space of one year".
Nor is there any right at this time to bring an action to annul the tax sale, by which Andry acquired the property in 1919, even if that sale had been vulnerable, for, in the same article of the Constitution of 1913 (233), it is further provided that "No sale of property for taxes shall be set aside for any cause, except on proof of dual assessment, or of payment of the taxes for which the property was sold prior to the date of the sale, unless the proceeding to annul is instituted within six months from service of notice of sale, which notice shall not be served until the time of redemption has expired, and within three years from the date of recordation of the tax deed, if no notice is given".
While it is true that, from the above constitutional provision, it appears that even after the expiration of three years a tax sale may be annulled on proof that the taxes for which the property was sold were actually paid, or on proof that the property was sold as the result of a dual assessment, the record here shows neither of these facts. No attempt is made to prove that the taxes for 1918 due on the assessment in the name of McGloin were paid, nor is there any attempt to show that, for the year 1918, there was a dual assessment and that the sale resulted from the incorrect or dual assessment. The sale resulted from a correct assessment made in the name of McGloin. The taxes due as a result of that assessment were not paid and, therefore, the sale was completely valid.
During the years 1928 to 1938, inclusive, the Union Homestead Association paid taxes on the property under the impression that it belonged to defendant, but it is shown, also, that for the years 1928 to 1934, inclusive, taxes on the property were also paid by Mrs. Andry. What may be the right of defendant resulting from the payment on dual assessment of taxes for the years 1928 to 1934, during which he did not own the property and during which the taxes were also paid by the true owner, we are not called upon to determine. Nor need we decide here what may be the right of defendant resulting from the fact that, for the years 1935 to 1938, inclusive, taxes were paid by him on property of plaintiffs assessed to him, though he did not own the property, for neither is that question before us. All that we are called upon to determine here is whether plaintiffs are the possessors of the legal title to the said property, and, since we think that they are,
It is ordered, adjudged and decreed that the judgment appealed from be and it is affirmed and that plaintiffs, Mrs. Adrienne Nunez Andry, widow of L. Fred Andry, L. Fred Andry, Jr., and Mrs. Genevieve Andry Gubler, wife of Nemours J. Gubler, be and they are recognized as the true and lawful owners of lots thirty-three (33), thirty-four (34), thirty-five (35) and thirty-six (36), of block 45, Canal Street Subdivision, as per plan on file in the office of the Clerk of Court for the Parish of Jefferson, and according to which plan said lots measure each twenty-five (25) feet *Page 236 
front on Lake Shore Drive by a depth of one hundred ten (110) feet, between equal and parallel lines, and that plaintiffs be recognized as entitled to the full and undivided possession thereof, and that William S. Pfaff, defendant, be and he is ordered to deliver possession of the said property to the said plaintiffs.
It is further ordered that defendant pay all costs.
Affirmed.